# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF VIRGINIA
## Norfolk Division

| | |
|---|---|
| James L. McConnell, | Chapter 7 |
|     Debtor | Case No. 07-72132-SCS |

| | |
|---|---|
| W. Clarkson McDow, Jr., | |
|     U.S. Trustee | |
|     Region Four, | |
|         Plaintiff | |
| | |
|     v. | |
| | APN: 08- |
| James L. McConnell, | |
|         Defendant | |

## COMPLAINT OBJECTING TO DISCHARGE OF JAMES L. MCCONNELL

W. Clarkson McDow, Jr., the United States Trustee for Region Four, ("U.S. Trustee"), by counsel, for his Complaint Objecting to the Discharge of James L. McConnell, states:

**Parties, Jurisdiction, and Procedural History**

1. Plaintiff, W. Clarkson McDow, Jr., is the United States Trustee for Region Four. He has standing to bring this action under 11 U.S.C. §§ 307 and 727.

Debera F. Conlon, Esq., AUST, VSB No. 20837
Cecelia Ann Weschler, Esq., VSB No. 28245
Kenneth N. Whitehurst, III, Esq., VSB No. 48919
Office of the U.S. Trustee
200 Granby Street Room 625
Norfolk, VA 23510
(757) 441-6012

2. Defendant, James L. McConnell, is the debtor in this Chapter 7 case and the defendant in this adversary proceeding.

3. This Complaint is premised on 11 U.S.C. §§ 727(a)(3) and (a)(5) and Fed. R. Bankr. P. 7001(4).

4. The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334. Venue is proper under 28 U.S.C. § 1409.

5. This is a core proceeding under 28 U.S.C. § 157(b)(2).

6. This case was commenced as a voluntary chapter 7 on September 24, 2007.

7. Donna J. Hall was appointed, and remains, the chapter 7 Trustee.

8. Defendant's 11 U.S.C. §341 meeting of creditors ("341 Meeting") was held on November 1, 2007.

9. On January 7, 2008, the debtor appeared for an examination by counsel for the U.S. Trustee pursuant to Fed. R. Civ. P. 2004 ("Rule 2004 Examination"), as ordered by this Court on December 3, 2007.

10. Defendant's primary scheduled asset is his real property located at 239 Plover Drive in Portsmouth Virginia.  *See* Schedule A.

11. At the time of his initial filing, Defendant listed only one unsecured creditor, Robert Baldwin, on his Schedule F.  He has since amended his Schedule F to add his attorney, The Law Office of John W. Bonney, P.C., as an additional unsecured creditor.

12. In his Schedules I and J respectively, Defendant lists his gross monthly income as $0.00 and his monthly expenses as $1,730.08.

13. Defendant indicates on his Chapter 7 Individual Debtor's Statement of Intention that he intends to retain his real property and to continue to make regular payments.

14. In his Statement of Financial Affairs, in responding to Question 1, Income from employment or operation of business, Defendant states that he earned $22,759.00 in 2005, $0.00 in 2006, and $0.00 in 2007.

15. Defendant responds to Question 8, Losses, in his Statement of Financial Affairs that he has none.

### Facts Leading to the Defendant's Bankruptcy Filing

16. In December 2004, Defendant filed a motion for judgment in Chesapeake Circuit Court against Robert Baldwin and General Electric ("GE") Corporation (the "Lawsuit"). Defendant filed the Lawsuit because he had been terminated as a GE employee after an altercation with Mr. Baldwin on GE property. Mr. Baldwin filed a counterclaim against Defendant, seeking $100,000 in compensatory damages and $350,000 in punitive damages.

17. In September 2005, Defendant liquidated the entire contents of his 401K plan. The total value of the liquidated assets on September 19, 2005 was $329,475.74. Of that amount, $65,895.15 was withheld for federal taxes and $13,179.03 was withheld for state taxes. This left $250,401.56 for Defendant, who deposited it into a money market account at Wachovia Bank. A few weeks later, he quit his job.

18. Trial of the Lawsuit was concluded on December 1, 2005. The jury returned a verdict in favor of Mr. Baldwin and against Defendant in the amount of $240,000 in compensatory damages and $100,000 in punitive damages.

19. On December 15, 2005, Defendant closed his money market account, withdrew the entire balance of $251,069.87 in cash, and stored it in his home. Defendant allowed his checking account to remain open, with a small balance.

20. On December 27, 2005, Defendant deposited $20,000.00 in cash to his checking

account. On January 4, 2006, he again deposited $20,000 in cash to his checking account. Defendant testified at his Rule 2004 Examination that these deposits were used to pay off credit card balances.

21. From that point forward, the Defendant's bank records indicate that he maintained his checking account to make certain monthly payments, such as his mortgage and utilities. His transactions include a series of cash deposits and withdrawals calculated to maintain his balance at or near the amount necessary to cover his monthly bills. The Defendant testified at his Rule 2004 Examination that he decided to keep his money in his house to stop Mr. Baldwin from "freezing the account so that I couldn't access my money out of it."

22. On January 13, 2006, Defendant entered into a Representation Agreement with the Law Office of John W. Bonney, P.C. A copy of the agreement is attached as Exhibit A. Pursuant to the agreement, Defendant paid a $75,000 retainer to Mr. Bonney's firm to cover the filing of a motion seeking reduction of the jury verdict, and the filing of any necessary appeals. Proximate to signing the agreement, Defendant deposited $75,000 in cash into an account held by Mr. Bonney's firm at BB&T, known as the "Law Office of John W. Bonney James L. McConnell Trust Account." The balance of this account on September 24, 2007 (the filing date) was $38.23.

23. Defendant sought, and obtained, remittitur of the jury's award. On March 30, 2006, the trial judge entered an Order reducing the judgment against Defendant to $1,000 in compensatory damages, and $10,000 in punitive damages. Mr. Baldwin appealed.

24. On April 20, 2007, the Virginia Supreme Court decided in favor of Mr. Baldwin. The judgment against Defendant was reinstated to $100,000 in compensatory damages (in line with Mr. Baldwin's *ad damnum*) and $100,000 in punitive damages.

25. Defendant testified both at his 341 meeting and Rule 2004 examination that he does not have any documentation substantiating the disposal of the cash remaining after the $40,000 in bank deposits, $75,000 retainer, and $65,770.54 payment to the IRS. Defendant has no documentation of how the $40,000 in bank deposits was spent, other than bank statements showing it was spent. This amounts to the Defendant's undocumented disposal of $110,299.33 since December 2005.

26. Defendant testified that he used the money for day to day expenses. He estimated that he lost approximately $20,000 gambling in Atlantic City, and spent at least $74 a week on lottery tickets. He has no records of these expenditures.

27. Defendant testified at his Rule 2004 examination that the money ran out in approximately June, 2007.

28. Defendant made no effort to obtain employment from October, 2005 to the present.

## COUNT I

29. Plaintiff re-alleges and incorporates the allegations of all preceding paragraphs.

30. Prior to the filing of this complaint, Defendant attempted to explain the loss of assets or deficiency of assets to meet his liabilities. As set out above in greater detail, Defendant explained that, of the over $250,000 in cash he withdrew in December 2005, approximately $40,000 was used to pay credit card bills, $75,000 was paid to Mr. Bonney's firm, $65,700.54 was paid to the IRS, approximately $20,000 was lost gambling in Atlantic City, an additional $74

per week was spent on lottery tickets, and the remainder was used to pay regular household expenses.

31.  Defendant is unable to document his use of at least $70,299.33 in cash for gambling, lottery tickets, and monthly expenses.  Additionally, the Defendant has no records indicating how he spent the $40,000 he deposited into his checking account.

32.  By providing such a vague explanation and by failing to provide documents to substantiate his explanation, Defendant failed to explain satisfactorily, before determination of denial of discharge, any loss of assets or deficiency of assets to meet his liabilities, and, thus, is not entitled to a discharge under 11 U.S.C. § 727(a)(5).

## COUNT II

33.  Plaintiff re-alleges and incorporates the allegations of all preceding paragraphs.

34.  Defendant's failure to maintain and preserve adequate records of over $70,000 in cash expenditures makes it impossible to ascertain Defendant's financial condition.

35.  Defendant's failure to keep such records is not justified under all the circumstances of the case.

36.  Defendant is not entitled to a discharge under 11 U.S.C. § 727(a)(3) because of his failure to keep or preserve any recorded information, including books, documents, records, and papers, from which his financial condition might be ascertained.

WHEREFORE, the U.S. Trustee prays the Court deny the discharge to Defendant, James L. McConnell, and to grant him such other and further relief as the Court may determine to be equitable and just.

Respectfully submitted,

W. CLARKSON MCDOW, JR
U.S. Trustee for Region Four

By: /s/ Kenneth N. Whitehurst, III
    Debera F. Conlon
       Assistant U.S. Trustee

    Kenneth N. Whitehurst, III
      Trial Attorney